## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| GOEBEL & COMPANY FURNITURE, LLC | ) ) ) | |
| and | ) ) | |
| WITHERS HOLDINGS, LLC | ) ) | |
| | ) | Cause No:  4:22-CV-00036 |
| Plaintiffs, | ) ) | JURY TRIAL DEMANDED |
| vs. | ) ) | Removed from The Circuit Court of |
| THE CINCINNATI INSURANCE COMPANY | ) ) | St. Louis City, State of Missouri Cause No.:  2122-CC09871 |
| and | ) ) | |
| CHERYL ELLEGOOD | ) ) | |
| Defendants. | ) | |

### DEFENDANT CHERYL ELLEGOOD'S MOTION TO DISMISS
### FOR FRAUDULENT JOINDER
### AND SUGGESTIONS IN SUPPORT

Defendant, Cheryl Ellegood, pursuant to FRCP 12(b)(6), and in support of her Motion to Dismiss for Fraudulent Joinder, states to the Court as follows:

1.      Plaintiffs are suing Defendant The Cincinnati Insurance Company for breach of contract and vexatious refusal to pay.  **They have also brought suit against Defendant Cheryl Ellegood, a claims adjuster employed by the Cincinnati Insurance Company for tortious interference with a contract as well as tortious interference with a business expectancy.**

2.      Defendants have now removed the above-captioned cause from the Circuit Court of St. Louis City, State of Missouri.  Plaintiffs are businesses incorporated in the State of Missouri, and Defendant, The Cincinnati Insurance Company is an insurance company incorporated in the

State of Ohio.  **As relevant to this Motion, Defendant Cheryl Ellegood is a citizen and resident of the State of Missouri.  Regardless, "[f]raudulent joinder of a non-diverse party does not prevent removal."**  *Wright Constr. Servs., Inc. v. Liberty Mut. Ins. Co.*, No. 4:18CV483 HEA, 2018 WL 3458703, at *2 (E.D. Mo. July 17, 2018).  Joinder is fraudulent where "there exists no reasonable basis in fact and law supporting a claim against the resident defendants.  *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983).

3.      In order to survive a Motion to Dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S., 2009).  A claim is facially plausible, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When a complaint pleads facts "that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*  Importantly, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement."  *Id.*  Instead, "only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*  In determining whether a complaint states a plausible claim for relief, the reviewing court "draw[s] on its judicial experience and common sense."  *Id* at 1949-50.

4.      Counts V and VI of Plaintiffs' Petition for Damages purport to allege respective claims of tortious interference with a contract and tortious interference with a business expectancy against Defendant Cheryl Ellegood.  As further described below, Plaintiffs' claim for tortious interference with a contract under Count V must be dismissed because it is based upon a form of tort which is not recognized under Missouri law.  Additionally, both claims should be dismissed

because the allegations contained within Counts V and VI fail to demonstrate that Defendant

Cheryl Ellegood lacked justification in her alleged actions.

**A.     The Court should dismiss Count V of Plaintiffs' Petition for Damages because Missouri law does not recognize a cause of action for intentional interference with *another's performance of its own contract.***

5.     In Count V of Plaintiffs' Petition, they allege that they had a contingency contract

with Rehab Construction to conduct repairs to 401 Withers upon payment by Defendant The

Cincinnati Insurance Company.  (Petition for Damages, Paragraph 35).  Plaintiffs then allege that,

due to "Defendant Ellegood's improper and coercive comments, Plaintiffs terminated the

contingency agreement with Rehab, and subsequently signed a similar agreement with a

replacement contractor."  (Petition for Damages, Paragraph 45).

6.     Missouri generally follows the Restatement (Second) Torts regarding the different

claims of tortious interference.  *Howard v. Youngman*, 81 S.W.3d 101, 112 (Mo. Ct. App. 2002).

Specifically, Missouri courts utilize Section 766 of the Restatement, entitled Intentional

Interference with Performance of Contract by Third Person, which provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by **inducing or otherwise causing the third person not to perform the contract**, is subject to liability to the **other** for the pecuniary loss **resulting to the other from the failure of the third person to perform the contract**.

> *Restatement (Second) of Torts* § 766 (1979).  (Emphasis added).

7.     The cause of action under this Section 766 of the Restatement only contemplates a

cause of action in which a third-party, as opposed to the party bringing suit, breached the contract

as a result of some form of inducement.  This is in contrast to Section 766A of the Restatement,

entitled Intentional Interference with Another's Performance of His Own Contract, which provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, **by preventing the other from performing the contract or causing his performance to be more expensive or burdensome**, is subject to liability to the other for the pecuniary loss resulting to him.
>
> *Restatement (Second) of Torts* § 766A (1979).  (Emphasis added).

8.      Section 766A contemplates situations in which the party bringing suit breached its own contract based upon interference with the same.  **However, "Missouri courts do not recognize a cause of action under Section 766(a) of the Restatement…."**  *Rail Switching Servs., Inc. v. Marquis-Missouri Terminal, LLC*, **533 S.W.3d 245, 259 (Mo. Ct. App. 2017).**  See, for example, *St. Louis Convention & Visitors Comm'n v. Nat'l Football League*, 154 F.3d 851 (8th Cir. 1998) in which the Court noted that a plaintiff's arguments based upon Section 766A were not valid in that no Missouri authority had recognized the theory.  *St. Louis Convention & Visitors Comm'n v. Nat'l Football League*, 154 F.3d 851, 865 (8th Cir. 1998).  Similarly, *Birdsong v. Bydalek*, 953 S.W.2d 103 (Mo.App. S.D. 1997) has more recently been cited to implicitly reject the cause of action.  *Mprove v. KLT Telecom, Inc.*, 135 S.W.3d 481, 495 (Mo. Ct. App. 2004).

9.      In sum, Plaintiffs' claim for tortious interference with a contract against Defendant Cheryl Ellegood is based upon their own termination of a contingency agreement.  Missouri law does not recognize a plaintiff's breach of his own contract to form the basis of a claim for tortious interference with a contract.  Therefore, the Court should dismiss Count V of Plaintiffs' Petition for Damages.

**B.      The Court should dismiss Counts V and VI of Plaintiffs' Petition for Damages because Plaintiffs have failed to allege sufficient facts demonstrating that Defendant Cheryl Ellegood lacked justification for her actions.**

10.      In Missouri, a valid claim for "[t]ortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's

knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; **(4) absence of justification**; and (5) damages." *Bishop & Associates, LLC v. Ameren Corporation*, 520 S.W.3d 463, 472 (Mo., 2017). (Emphasis added). Not every interference gives rise to a claim for damages, and "[i]t is only where the interference is wrongful that a cause of action exists." *Pillow v. General American Life Ins. Co.*, 564 S.W.2d 276, 283 (Mo.App. 1978). Additionally, a person "cannot be held liable for interfering with a business relationship if it has an unqualified right to perform the act." *Bishop & Associates, LLC*, 520 S.W.3d at 472 (Mo., 2017). Similarly, if that person "has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his or her own interests." *Id*. Improper means "are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id*.

11. In *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725 (C.A.8 (Mo.), 2011), the plaintiff brought suit in Missouri state court against its insurer and a claims adjuster. *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725, 726–27 (C.A.8 (Mo.), 2011). The claims adjuster had been hired by the insurer to investigate the claim. *Id* at 731. After the insurer removed the case to federal court, the insured filed a Motion to Remand on the basis that there was a lack of complete diversity in that the adjuster was a resident of the same state in which the insurer was incorporated. *Id* at 726. Despite this argument, the district court found that the adjuster had been fraudulently joined to destroy diversity jurisdiction and dismissed the insured's claims against the adjuster, **including one for tortious interference with a contract**. *Id*. On review, the Court of Appeals noted that the basis for the insured's claim for tortious interference against the

adjuster was reliant upon a statement by the adjuster which attributed the loss to an incorrect cause. **It then quoted the district court's rationale for dismissing the claim, that the insured "*cannot show a lack of justification* for any of the statements in this report because [the adjuster's] job was to investigate and report to [the insurer] on the cause of loss."** *Id* at 731.  (Emphasis added).  The Court then endorsed this rationale and upheld dismissal of the claim.  *Id*.

12.    Here, Plaintiffs allege that "[a]t all times relevant hereto, Defendant Ellegood was employed by Defendant Cincinnati as an agent and/or claims adjuster for Defendant Cincinnati, and her acts and/or omissions giving rise to this claim were within the course and scope of her employment."  (Petition for Damages, Paragraph 5).  Just as the insured in *Council Tower Ass'n* could not show that the adjuster lacked justification for the reason that his job "was to investigate and report to [the insurer]," Plaintiffs cannot show that Defendant Cheryl Ellegood lacked justification in her actions because her job was to investigate and report to Defendant The Cincinnati Insurance Company.  As such, Counts V and VI of Plaintiffs' Petition for Damages should be dismissed.

13.    Plaintiffs may argue that they have alleged that Defendant Cheryl Ellegood's actions as alleged in their Petition are not analogous to those of the adjuster in *Council Tower Ass'n*.  Nevertheless, this argument fails.  Plaintiffs have merely alleged that she "indicated that Defendant Cincinnati would pay only up to $100,000.00 for the storm damage" and advised Plaintiffs and the representative from Rehab Construction Company "to ensure repairs remained under $100,000.00 in order to receive an insurance disbursement swiftly," "that any estimate or claim submitted in excess of $100,000.00 would be transferred to Defendant Cincinnati's legal department," and "that Defendant Cincinnati's legal department was likely to deny any claim in excess of the arbitrary figure of $100,000.00." (Petition for Damages, Paragraphs 39, 40, 41, and

42).  Notably, Plaintiffs do not characterize any of Defendant Cheryl Ellegood's statements as false.  Instead, the only characterization which they make regarding her statements is that they were "improper and coercive."[1]

14.     As relevant here, "the business of an adjusting agent is to ascertain the loss and agree with the assured on a settlement."  *Curtis v. Indemnity Co. of America*, 37 S.W.2d 616, 622 (Mo. 1931).  *See also Galemore Motor Co., Inc. v. State Farm Mut. Auto. Ins. Co.*, 513 S.W.2d 161, 165–66 (Mo.App. 1974).  The factual allegations clearly demonstrate that Defendant Cheryl Ellegood's statements were made in the normal course of her adjustment of the claim.  If actions such as stating an opinion as to the value of a claim and of the position which an insurer will take regarding that value are considered "improper and coercive," then it becomes difficult to imagine how an adjuster might adjust a claim without performing such conduct.  Put bluntly, Defendant Cheryl Ellegood was only "doing her job" as employed by Defendant The Cincinnati Insurance Company.  Pursuant to *Council Tower Ass'n*, Plaintiffs cannot show that such actions lacked justification.

15.     To the extent that Plaintiffs further argue that the Petition alleges Defendant Cheryl Ellegood somehow misrepresented facts, it is worth noting that her statements would merely constitute opinion.  *In Kruse Concepts, Inc. v. Shelter Mut. Ins.*, 16 S.W.3d 734 (Mo.App. E.D., 2000), the insured claimed that an adjuster misrepresented facts by giving estimates of a loss which were "below reasonable and failed to include work that obviously needed to be done."  *Kruse Concepts, Inc. v. Shelter Mut. Ins.*, 16 S.W.3d 734, 738 (Mo.App. E.D., 2000).  The Court of Appeals held that the adjuster's estimates were statements of opinion, not fact.  *Id*.  As such, the insured could not demonstrate that providing those estimates was a wrongful act.  *Id*.  Under this

---

[1] These characterizations are entirely conclusory and, therefore, should not be assumed by the Court in determining the sufficiency of Plaintiffs' factual allegations.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940–41 (U.S., 2009).

same rationale, Defendant Cheryl Ellegood's alleged statements as to value cannot be considered misrepresentation of facts.[2]

16.     Finally, Plaintiffs cannot argue that Defendant Cheryl Ellegood should not have worked to adjust the claim.  Plaintiffs' policy of insurance which is attached hereto and incorporated herein in its entirety contains numerous provisions relating to inspections and adjustment of claims.  (Exhibit A, Insurance Agreement).  As a claims adjuster hired by Defendant The Cincinnati Insurance Company, she was entitled to perform her work.

17.     In sum, Plaintiffs have failed to state claims for tortious interference with a contract and tortious interference with a business expectancy in Counts V and VI of their Petition for Damages because Defendant Cheryl Ellegood's actions were well within her role as a claims adjuster.  As such, Plaintiffs cannot show that she lacked justification for her actions, and the claims against her must fail.  Further, to the extent that Plaintiffs may argue that the she misrepresented fact, this is simply not true because each of her statements related directly to her opinion as to the value of Plaintiffs' loss.  For each of these reasons, the Court should find that Defendant Cheryl Ellegood was fraudulently joined and dismiss the claims against her.

**WHEREFORE** Defendant Cheryl Ellegood respectfully request that this Honorable Court find that she was fraudulently joined, dismiss the claims against her, and grant such further relief as It deems just and appropriate under the circumstances.

---

[2] Note that, even to the extent that Plaintiffs allege that Defendant Cheryl Ellegood made other statements, these were each entirely related to her opinion as to the value of the loss.

BROWN & JAMES, P.C.

/s/ Brandon B. Copeland
David P. Bub, #44554
Brandon B. Copeland, #58226
Attorneys for Defendants
800 Market Street, 11th Floor
St. Louis, Missouri 63101
314-421-3400
314-421-3128 – FAX
dbub@bjpc.com
bcopeland@bjpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed by United States Postal Service the document to the following counsel at the addresses listed below and sent the same by electronic mail to the e-mail addresses listed below.

Nicholas D. Brown
Thomas J. Sanfilippo
THE LAW FIRM OF THOMAS SANFILIPPO & ASSOCIATES, LLC
211 N. Broadway, Suite 2100
St. Louis, Missouri 63102
nbrown@tsalawaoffice.com
*Attorneys for Plaintiffs*
*#27074325.1*

/s/ Brandon B. Copeland

Date: January 10, 2022