IN THE 22ND JUDICIAL CIRCUIT COURT OF ST. LOUIS CITY
STATE OF MISSOURI

| | |
|---|---|
| **GOEBEL & COMPANY FURNITURE, LLC**<br><br>and<br><br>**WITHERS HOLDINGS, LLC**<br><br>Plaintiffs,<br><br>v.<br><br>**THE CINCINNATI INSURANCE COMPANY**<br>Serve at: <u>Registered Agent</u><br>c/o Director of Insurance<br>301 W. High Street, Room 530<br>Jefferson City, MO 65101<br><br>and<br><br>**CHERYL ELLEGOOD**<br>Serve at:<br>822 Nancy Lane<br>Weldon Spring, MO 63304<br><br>Defendant. | Cause No. _____<br><br>Div. No. _____<br><br>**JURY TRIAL DEMANDED** |

**PETITION FOR DAMAGES**

COMES NOW, Plaintiff Goebel & Company Furniture, LLC (hereinafter as "Plaintiff Goebel") and Plaintiff Withers Holdings, LLC (hereinafter as "Plaintiff Withers" and, collectively with Plaintiff Goebel, as "Plaintiffs"), by and through the undersigned counsel, and for their Petition for Damages against Defendants The Cincinnati Insurance Company (hereinafter as "Defendant Cincinnati") and Cheryl Ellegood (hereinafter as "Defendant

Electronically Filed - City of St. Louis - December 09, 2021 - 02:50 PM

Ellegood" and, collectively with Defendant Cincinnati, as "Defendants"), states the following to the Court:

## PARTIES

1. At all times relevant hereto, Plaintiff Goebel was and remains a business incorporated and licensed to do business in the State of Missouri.

2. At all times relevant hereto, Plaintiff Withers was and remains a business incorporated and licensed to do business in the State of Missouri.

3. At all times relevant hereto, Defendant Cincinnati, including its employees, agents, representatives, and servants (hereinafter collectively as "Defendant Cincinnati") was a business incorporated in the State of Ohio, and licensed to do business in the State of Missouri.

4. At all times relevant hereto, Defendant Ellegood was a citizen and resident of the State of Missouri.

5. At all times relevant hereto, Defendant Ellegood was employed by Defendant Cincinnati as an agent and/or claims adjuster for Defendant Cincinnati, and her acts and/or omissions giving rise to this claim were within the course and scope of her employment.

## JURISDICTION AND VENUE

6. The allegations contained in all aforementioned paragraphs are hereby realleged and incorporated as if fully set forth herein.

7. This Court has personal jurisdiction over Defendants because the acts, events, and conduct giving rise to the claims asserted in this lawsuit occurred in City of St. Louis, Missouri.

8. This Court has subject matter jurisdiction because this cause of action arises under the laws of the State of Missouri.

9. Venue is proper in this Court because the claims alleged herein accrued in City of St. Louis, Missouri.

## FACTUAL BACKGROUND

10. The allegations contained in all aforementioned paragraphs are hereby realleged and incorporated as if fully set forth herein.

11. At all times relevant hereto, Plaintiffs were the owners of the premises, structures, and real property located at 401 Withers Avenue, St. Louis, Missouri, 63147 (hereinafter "401 Withers").

12. At all times relevant hereto, the buildings and/or structures located at 401 Withers were utilized by Plaintiffs to manufacture high end custom furniture.

13. The aforementioned furniture was manufactured at 401 Withers by Plaintiffs utilizing expensive machinery, and sold mainly to corporate offices.

14. At all times relevant hereto, Defendant Cincinnati was vicariously liable for the acts, failures, and omissions of their employees and/or agents, including Defendant Ellegood, under the doctrine of *respondeat superior*.

15. At the time of the losses alleged in this petition, Defendant Cincinnati had contracted to insure and cover the premises, structures, and real property at 401 Withers against certain losses (hereinafter "the Policy").

16. The Policy was valid and in effect at the time of the physical losses to 401 Withers.

17. On or about October 25th, 2019, a sinkhole was observed forming in the rear parking area of 401 Withers.

18.  Plaintiffs promptly notified Defendant Cincinnati about the aforementioned sinkhole, and the damage arising therefrom.

19.  Plaintiffs immediately established barricades around the sinkhole to prevent access to the area, and they did so in order to prevent any property loss or future bodily injury to Plaintiffs' employees, customers, and/or others similarly situated.

20.  A claims adjuster for Defendant Cincinnati was permitted to inspect the sinkhole, and the adjuster was granted all necessary access to the damaged portions of the insured property as required by the Policy.

21.  During the inspection, the claims adjuster for Defendant Cincinnati stated to agents of Plaintiffs that he lacked specific knowledge regarding claims that involve sinkholes.

22.  The claims adjuster took minimal photographs of the area, and did not have a study conducted to determine the cause of the sinkhole.

23.  On January 13th, 2020, Plaintiffs received a letter from Defendant Cincinnati dated December 30th, 2019, which stated that Plaintiffs' claim was denied.

24.  Plaintiffs were advised by Defendant Cincinnati to provide proof that the sinkhole was not caused by man-made means in order for their claim to be reconsidered.

25.  Plaintiffs provided information to Defendant Cincinnati from a United States Geological Survey that concluded that no mines or other underground, man-made structures were located at 401 Withers.

26.  Plaintiffs also provided to Defendant Cincinnati the results of an environmental study of 401 Withers conducted in 2019, and that study indicated that no man-made structures were built upon the property since 1900.

27. Any further study of Plaintiffs' property would have required extensive excavations, which would have necessitated major out-of-pocket expenditures by the Plaintiffs.

28. In spite of the information provided by Plaintiffs to Defendant Cincinnati, the claim for the sinkhole remained denied by Defendant Cincinnati.

29. Between May 2020 and March 2021, at least 3 catastrophic storms struck the St. Louis Metropolitan area.

30. The aforementioned storms carried significant amounts of hail and wind.

31. Due to the hail from those storms, large portions of the roof of 401 Withers were damaged.

32. In the weeks following the storms, significant amounts of rainwater began to leak through the roof due to the storm damage.

33. Plaintiffs took all feasible measures to protect the building and the machinery within from damage caused by the leaking roof, however significant amounts of machinery and equipment utilized in the manufacturing process suffered catastrophic water damage.

34. Plaintiffs promptly contacted Defendant Cincinnati about the roof and the damage arising therefrom.

35. On April 28, 2021, Plaintiffs entered into a contingency contract with Rehab Construction (hereinafter as "Rehab"), wherein Rehab would conduct the repairs to 401 Withers upon payment for the loss by Defendant Cincinnati.

36. Defendant Ellegood, a claims adjuster for Defendant Cincinnati, was permitted to inspect the damaged areas of 401 Withers, and she was granted all necessary access to the damaged portions of the insured property as required by the Policy.

37. Representatives of Plaintiffs and Rehab were present for the inspection conducted by Defendant Ellegood.

38. During the inspection, Defendant Ellegood took a brief look at the storm damage, and took no photographs nor measurements of the affected areas.

39. After her cursory inspection, Defendant Ellegood indicated that Defendant Cincinnati would pay only up to $100,000.00 for the storm damage.

40. Defendant Ellegood advised Plaintiffs and the representative from Rehab to ensure repairs remained under $100,000.00 in order to receive an insurance disbursement swiftly.

41. Defendant Ellegood also advised Plaintiffs and the representative from Rehab that any estimate or claim submitted in excess of $100,000.00 would be transferred to Defendant Cincinnati's legal department.

42. Defendant Ellegood further indicated that Defendant Cincinnati's legal department was likely to deny any claim in excess of the arbitrary figure of $100,000.00.

43. After the inspection and comments by Defendant Ellegood, Rehab submitted a repair estimate for a sum woefully insufficient to conduct the necessary repairs to 401 Withers.

44. Due to the insufficient estimate submitted by Rehab, Plaintiffs were doubtful that Rehab was acting in Plaintiffs' interest regarding the insurance claim with Defendant Cincinnati.

45. Because of the doubts sown by Defendant Ellegood's improper and coercive comments, Plaintiffs terminated the contingency agreement with Rehab, and subsequently signed a similar agreement with a replacement contractor.

46. The replacement contractor, Storm Shield, submitted an estimate to Cincinnati for approximately $350,000.00 more than the estimate submitted by Rehab.

47. Subsequently, Rehab have asserted a claim against Plaintiffs for breach of contract and have demanded damages in the amount of $57,632.22.

48. On May 18, 2021 and May 27, 2021, Plaintiffs' counsel attempted to contact Defendant Ellegood to request funds to install tarpaulin over the roof at 401 Withers in order to mitigate any further damage from additional storms.

49. Plaintiffs' counsel received no response from Defendant Ellegood regarding the tarping of 401 Withers.

50. Plaintiffs suffered further losses and damage to equipment and machinery from additional water leaking from the damaged roof to the interior of 401 Withers.

51. In spite of all the mitigation efforts undertaken by Plaintiff to prevent further damage, including the installation of tarping at their own expense, the damage to 401 Withers and the machinery inside is ongoing.

## COUNT I: BREACH OF CONTRACT
### (Defendant Cincinnati – October 25th, 2019 claim)

52. The allegations contained in all aforementioned paragraphs are hereby realleged and incorporated as if fully set forth herein.

53. On or about May 23, 2019, Defendant Cincinnati issued Policy Number EPP 032 89 80 to Plaintiffs, which is in effect until May 23, 2022.

54. At the time the aforementioned sinkhole was discovered, 401 Withers was covered under the Policy for damages caused by the sinkhole.

55. Plaintiffs met their contractual obligations by paying the premiums for the Policy, timely notifying Defendant Cincinnati of the losses, and by permitting an agent of Defendant Cincinnati to inspect the losses.

56. Under the Policy, which was a valid and binding contract, Defendant Cincinnati had an obligation to cover Plaintiffs' losses caused by the aforementioned sinkhole.

57. Defendant Cincinnati has refused to cover any losses for the sinkhole as required by the Policy.

58. Because Defendant Cincinnati has refused to cover those losses, they have not met their contractual obligation.

59. As a direct and proximate result of the aforementioned sinkhole and Defendant Cincinnati's subsequent refusal to pay, Plaintiffs have suffered the loss of use of the portion of the covered property at 401 Withers.

60. As a direct and proximate result of the aforementioned sinkhole and Defendant Cincinnati's subsequent refusal to pay under the Policy, Plaintiffs have been caused to expend sums of money for reasonable and necessary remedial actions to 401 Withers.

61. As a direct and proximate result of the aforementioned sinkhole and Defendant Cincinnati's subsequent refusal to pay under the Policy, Plaintiffs will be caused to expend sums of money for reasonable and necessary remedial actions to 401 Withers in the future, for which they will become indebted.

WHEREFORE, Plaintiffs pray for judgment against Defendant Cincinnati and award Plaintiffs actual and compensatory damages in excess of Twenty-Five Thousand Dollars ($25,000.00), together with post-judgment interest in accordance with RSMo § 408.040, Plaintiffs' reasonable costs and fees incurred herein, and for any such other and further relief as this Honorable Court deems just and proper under the circumstances.

Electronically Filed - City of St. Louis - December 09, 2021 - 02:50 PM

## COUNT II: VEXATIOUS REFUSAL TO PAY
### (Defendant Cincinnati – October 25th, 2019 claim)

62. The allegations contained in all aforementioned paragraphs are hereby realleged and incorporated as if fully set forth herein.

63. At the time the aforementioned sinkhole was discovered, 401 Withers was covered under the Policy for damages caused by the sinkhole.

64. Despite timely notice of the claims of loss caused by the sinkhole to 401 Withers, and the documentation provided by Plaintiffs, Defendant Cincinnati has vexatiously refused to pay such claims in bad faith, and without reasonable cause and/or excuse.

65. As a direct and proximate result of the aforementioned sinkhole and Defendant Cincinnati's subsequent refusal to pay, Plaintiffs have suffered the loss of use of the portion of the covered property at 401 Withers.

66. As a direct and proximate result of the aforementioned sinkhole and Defendant Cincinnati's subsequent denial of the related claims, Plaintiffs have been caused to expend sums of money for reasonable and necessary remedial actions to 401 Withers.

67. As a direct and proximate result of the aforementioned sinkhole and Defendant Cincinnati's subsequent denial of the related claims, Plaintiffs will be caused to expend sums of money for reasonable and necessary remedial actions to 401 Withers in the future, for which they will become further indebted.

68. Plaintiffs are entitled to pre-judgment interest and vexatious damages, including attorney's fees, pursuant to RSMo §§ 375.296 and 375.420 due to Defendant Cincinnati's refusal to pay these claims without reasonable cause or excuse.

WHEREFORE, Plaintiffs pray for judgment against Defendant Cincinnati and award Plaintiffs actual and compensatory damages in excess of Twenty-Five Thousand Dollars

Electronically Filed - City of St. Louis - December 09, 2021 - 02:50 PM

($25,000.00), together with pre-judgment interest in accordance with RSMo § 408.040, post-judgment interest, Plaintiffs' reasonable costs and fees incurred herein, and for any such other and further relief as this Honorable Court deems just and proper under the circumstances.

### COUNT III: BREACH OF CONTRACT
(Defendant Cincinnati – March 11th, 2021 claim)

69. The allegations contained in all aforementioned paragraphs are hereby realleged and incorporated as if fully set forth herein.

70. At the time the aforementioned storm and water damage was discovered, 401 Withers was covered under the Policy for damage to the roof caused by weather, and subsequent damage caused by water leaking through the roof into 401 Withers.

71. Plaintiffs met their contractual obligations by paying the premium for the Policy, by timely notifying Defendant Cincinnati of the losses, and by permitting an agent of Defendant Cincinnati to inspect the losses.

72. Under the Policy, which was a valid and binding contract, Defendant Cincinnati had an obligation to cover Plaintiffs' losses caused by the aforementioned hail and subsequent water damage.

73. Defendant Cincinnati has refused to pay the full monetary value for the damages suffered by Plaintiffs as required by the Policy.

74. Because Defendant Cincinnati has refused to pay the full monetary value for the damages suffered by Plaintiffs, they have not met their contractual obligation.

75. As a direct and proximate result of the aforementioned roofing and water damage, and Defendant Cincinnati's subsequent refusal to pay the full monetary value for the repairs and damages suffered by Plaintiffs, Plaintiffs have been caused to expend sums of money for reasonable and necessary repairs and remedial actions to their property.

76. As a direct and proximate result of the aforementioned roofing and water damage, and Defendant Cincinnati's subsequent refusal to pay the full monetary value for the repairs and damages to 401 Withers, Plaintiffs have been forced to expend sums of money to replace damaged machinery essential to the operation of Plaintiffs' business.

77. As a direct and proximate result of the aforementioned roofing and water damage, and Defendant Cincinnati's subsequent refusal to pay the full monetary value for the repairs and damages to 401 Withers, Plaintiffs will be caused to expend sums of money for reasonable and necessary repairs and remedial actions to their property in the future, for which they will become indebted.

WHEREFORE, Plaintiffs pray for judgment against Defendant Cincinnati and award Plaintiffs actual and compensatory damages in excess of Twenty-Five Thousand Dollars ($25,000.00), together with post-judgment interest in accordance with RSMo § 408.040, Plaintiffs' reasonable costs and fees incurred herein, and for any such other and further relief as this Honorable Court deems just and proper under the circumstances.

### COUNT IV: VEXATIOUS REFUSAL TO PAY
### (Defendant Cincinnati – March 11th, 2021 claim)

78. The allegations contained in all aforementioned paragraphs are hereby realleged and incorporated as if fully set forth herein.

79. At the time the aforementioned storm and water damage was discovered, 401 Withers was covered under the Policy for damage to the roof caused by storms and subsequent damage caused by water leaking through the roof.

80. Despite timely notice of the claims of storm damage to the roof caused by storms, and the subsequent water damage to 401 Withers, Defendant Cincinnati has vexatiously refused

to pay the full monetary value for such claims in bad faith, and without reasonable cause and/or excuse.

81. As a direct and proximate result of the aforementioned roofing and water damage, and Defendant Cincinnati's subsequent vexatious refusal to pay the full monetary value for the repairs and damages suffered by Plaintiffs, Plaintiffs have been caused to expend sums of money for reasonable and necessary repairs and remedial actions to their property.

82. As a direct and proximate result of the aforementioned roofing and water damage, and Defendant Cincinnati's subsequent vexatious refusal to pay the full monetary value for the repairs and damages to 401 Withers, Plaintiffs have been forced to expend sums of money to replace damaged machinery essential to the operation of Plaintiffs' business.

83. As a direct and proximate result of the aforementioned roofing and water damage, and Defendant Cincinnati's subsequent vexatious refusal to pay the full monetary value for the related repairs and damages, Plaintiffs will be caused to expend sums of money for reasonable and necessary repairs and remedial actions to their property in the future, for which they will become indebted.

84. Plaintiffs are entitled to pre-judgment interest and vexatious damages, including attorney's fees, pursuant to RSMo §§ 375.296 and 375.420 due to Defendant Cincinnati's vexatious refusal to pay these claims without reasonable cause or excuse.

WHEREFORE, Plaintiffs pray for judgment against Defendant Cincinnati and award Plaintiffs actual and compensatory damages in excess of Twenty-Five Thousand Dollars ($25,000.00), together with pre-judgment interest in accordance with RSMo § 408.040, post-judgment interest, Plaintiffs' reasonable costs and fees incurred herein, and for any such other and further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT V: TORTIOUS INTERFERENCE WITH CONTRACT
### (Defendant Ellegood)

85. The allegations contained in all aforementioned paragraphs are hereby realleged and incorporated as if fully set forth herein.

86. At the time of Defendant Ellegood's inspection of 401 Withers, and her improper statements made during that inspection, Plaintiffs had a valid contingency contract with Rehab to conduct the estimate and subsequent repairs to the damaged property.

87. Defendant Ellegood knew, or should have known of the existence of the contract between Plaintiffs and Rehab.

88. Plaintiff is of the information and belief that Defendant Ellegood's statements about the value of the claim, and what amount Defendant Cincinnati was willing to pay to satisfy the claim, were made with the intent to cause Rehab to submit an estimate that was artificially low, and insufficient to satisfy Plaintiffs' damages and/or conduct the necessary repairs to 401 Withers.

89. Defendant Ellegood lacked any legal justification for her statements relating to the value of the claim, and what Defendant Cincinnati would do if Rehab exceeded the arbitrary figure of $100,000.00 in repairs.

90. As a direct and proximate result of the tortious statements made by Defendant Ellegood, Plaintiffs' contract with Rehab was breached, and Plaintiff faces legal action related to that breach.

91. As a direct and proximate result of the tortious statements made by Defendant Ellegood, and Rehab's threats of legal action, Plaintiffs were required to seek legal counsel to defend against such an action, for which they have become indebted.

92. As a direct and proximate result of the tortious statements made by Defendant Ellegood, Rehab submitted an estimate that was insufficient to satisfy Plaintiffs' damages and cover the necessary repairs to 401 Withers.

93. As a direct and proximate result of the tortious statements made by Defendant Ellegood, Plaintiffs were forced to seek a new contractor and to retain counsel, causing unnecessary and damaging delays in obtaining necessary repairs and mitigation measures, for which they will become indebted.

WHEREFORE, Plaintiffs pray for judgment against Defendant Ellegood and award Plaintiffs actual and compensatory damages in excess of Twenty-Five Thousand Dollars ($25,000.00), together with post-judgment interest in accordance with RSMo § 408.040, Plaintiffs' reasonable costs and fees incurred herein, and for any such other and further relief as this Honorable Court deems just and proper under the circumstances.

## COUNT VI: TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### (Defendant Ellegood)

94. The allegations contained in all aforementioned paragraphs are hereby realleged and incorporated as if fully set forth herein.

95. At the time of Defendant Ellegood's inspection of 401 Withers, and her improper statements made during that inspection, Plaintiffs had a valid business expectancy that Rehab would undertake to properly and fully estimate the damages and costs of repairs caused to 401 Withers by the aforementioned catastrophic storms.

96. Defendant Ellegood knew, or should have known of the business expectancy between Plaintiffs and Rehab.

97. Plaintiff is of the information and belief that Defendant Ellegood's statements during the inspection that related to the value of the claim, and what Defendant Cincinnati was

willing to pay to satisfy the claim, were made with the intent to cause Rehab to submit an estimate that was artificially low and insufficient to satisfy Plaintiffs' damages and/or conduct the necessary repairs to 401 Withers.

98. Defendant Ellegood lacked any legal justification for her statements relating to the value of the claim, and what Defendant Cincinnati would be willing to pay to satisfy the claim.

99. As a direct and proximate result of the tortious statements made by Defendant Ellegood, Rehab produced an estimate for repairs to 401 Withers that was insufficient to properly address the necessary costs of repairs and/or mitigation.

100. As a direct and proximate result of the tortious statements made by Defendant Ellegood, Plaintiffs were forced to seek a new contractor and to retain counsel, causing unnecessary and damaging delays in obtaining necessary repairs and mitigation measures, for which they will become indebted.

WHEREFORE, Plaintiffs pray for judgment against Defendant Ellegood and award Plaintiffs actual and compensatory damages in excess of Twenty-Five Thousand Dollars ($25,000.00), together with post-judgment interest in accordance with RSMo § 408.040, Plaintiffs' reasonable costs and fees incurred herein, and for any such other and further relief as this Honorable Court deems just and proper under the circumstances.

Respectfully submitted,

**THE LAW FIRM OF
THOMAS SANFILIPPO &
ASSOCIATES, LLC**

*/s/ Nicholas D. Brown*
Nicholas D. Brown– MO Bar #62770
211 N. Broadway, Suite 2100
St. Louis, Missouri 63102

Electronically Filed - City of St. Louis - December 09, 2021 - 02:50 PM

PH: (314) 669-5752
FX: (314) 396-6655
EM: nbrown@tsalawoffice.com
***ATTORNEY FOR PLAINTIFF***

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of Court using the Missouri Electronic Filing System, on December 9, 2021.

*/s/ Nicholas D. Brown*